No. 21,810.

FRED GADBERRY, a minor, etc., *Appellee and Appellant,* v. THE HUTCHINSON EGG CASE FILLER COMPANY, *Appellant and Appellee.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Personal Injuries—Accident Occurred "on, in or about" the Factory of Defendant.* In a case under the workmen's compensation act it was shown that the factory where the plaintiff was employed was located sixty feet distant from another factory; that between them was maintained a runway across which the employees of both factories took material from one to the other; and that plaintiff while so engaged was accidentally thrown from the runway and injured. *Held,* that he was injured by an accident arising out of and in the course of his employment on, in or about the factory of the defendant.

2. SAME—*Extent of Plaintiff's Disability—Finding Construed.* The special findings of the jury, that the extent of plaintiff's disability is "about 50 per cent," and that he would be able to earn in the future, in some other suitable employment, "about 50 per cent" of his usual wages, are held to be a finding of one-half disability; and where in such a case, the jury by the general verdict awards damages of about 63 per cent, *held,* that the judgment should be reduced to allow the plaintiff to recover on a basis of one-half disability.

3. SAME—*Judgment—Deductions for Benefits Received.* Under the provision of the workmen's compensation act, that "in fixing the amount of the payment, allowance shall be made for any payment or benefit which the workman may receive from the employer during his period of incapacity" (Gen. Stat. 1915, § 5906), an allowance for hospital charges and medical attendance of a reasonable amount, actually incurred by defendant for the benefit of the workman, was proper (*Bundy v. Products Co.,* 103 Kan. 40, 43, 172 Pac. 1020), and where the defendant has been rendered liable for such expenses, the court is justified in ordering a stay of execution until the charges are paid and the defendant is released from liability.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 11, 1919. Modified and affirmed.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellant.

*James L. Hogin, Roy R. Hubbard,* both of Kansas City, and *A. P. Leacy,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.:   In an action under the workmen's compensation law, plaintiff recovered judgment, and defendant appeals.

Plaintiff was in the employ of the Hutchinson Egg Case Filler Company; that company and the Hutchinson Box Board and Paper Company occupied adjoining tracts of land, upon which their factories were located, a space of about sixty feet separating their main buildings.   At each factory there was a platform dock, and these were connected by a runway over which strawboard and other material used in the egg case filler factory were conveyed from the box board factory.   The employees of defendant would go over this runway, where they would get trucks loaded with the strawboard and take them across to the defendant's factory.   The runway crossed over a switch track located between the two factories; and whenever a box car happened to be on the switch track, the floor of the car would be used as a part of the runway, a sheet of steel about six feet square being laid between the car and the defendant's dock, and the space between the car and the box board company's dock being bridged in the same way, so that a continuous passage could be had between the two factories. On the day plaintiff was injured, he was sent to the box board factory to get a truck loaded with strawboard weighing about twenty-four hundred pounds, and with the help of an employee of the box board company, was returning by way of the connecting runway when the sheet of steel between the defendant's dock and the floor of the box car slipped, throwing plaintiff between the car and the dock; the truck fell upon him and he sustained serious injuries.

The defendant demurred to the evidence on the ground that plaintiff was not shown to have received his injuries while "on, in or about" the factory or plant where he was employed.   It is urged that the court erred in overruling the demurrer.   In view of the undisputed facts, the point hardly rises to the dignity of a serious contention.   It cannot be said that the facts bring the case within the doctrine of *Bevard v. Coal Co.,* 101 Kan. 207, 165 Pac. 657, where it was held that a demurrer to the petition was properly sustained because the accident did not occur on, in or about a mine, within the meaning of the compensation act.   In that case the defendant operated two

open-pit coal mines, a quarter of a mile apart. The workman was a messenger and had left one mine on an errand and had not arrived at the other when he was injured on the premises of a railway company which lay between the two mines.

In another recent case, *Hicks v. Swift & Co.*, 101 Kan. 760, 168 Pac. 905, the same question arose where the injured workman was employed to drive a truck for the delivery of meat from the defendant's packing house in Kansas City, Kan., to its customers in Kansas City, Mo., and was injured by a box of meat falling on him while he was making a delivery several miles from the packing house. It was held that he was not injured on, in or about the factory where he was employed. In the present case plaintiff, at the time of his injury, was within a few feet of the dock which was a part of the defendant's factory. Under the instructions of his foreman, he took a previously defined route between the two factories over a connecting way which was used in his employer's business. We think the entire runway from the defendant's factory over to the factory of the box board company was within such close proximity to the defendant's place of business, and so used as part of it, that if the injury had happened under the same circumstance, but on the other side of the box car, or on the other end of the runway, or even on the dock of the other factory, it might well be said that the plaintiff was injured while in, on or about the factory and premises of his employer.

The plaintiff was earning, at the time of his injury, a weekly wage of $13. In answer to special questions, the jury found that he was not totally incapacitated, but was incapacitated to the extent of "about 50 per cent," and that he will be able to earn in the future, in some suitable employment, "about 50 per cent" of his former wages. While the record does not show the precise number of days he was totally disabled, it is practically conceded by both parties that he was totally incapacitated for the period of about 26 weeks. Under the statute he was entitled during total disability to one-half his usual earnings, which would amount to $169. It is conceded that the defendant paid him during this period $168.84, which is substantially the full amount for the time he was totally disabled. The jury assessed the amount of his recovery at $1,768.84, less $168.84, or $1,600.

Gadberry v. Egg Case Filler Co.

The defendant contends that the special findings show that the general verdict is for an excessive amount. The contention is based upon the two findings of the jury that the extent of the plaintiff's disability is "about 50 per cent." Of course, if the jury meant by these findings that he was disabled to the extent of one-half of his earning capacity and would be able to earn in the future in some other suitable employment one-half of his usual wage, the judgment is excessive, because, after allowing for 26 weeks' total disability, there remained 390 weeks for which compensation should be allowed at 50 per cent of the difference between what plaintiff was earning before the injury and what he would earn afterwards, which would be $3.25 per week, or $1,267.50. The verdict was for $1,600. The plaintiff cites authorities defining the word "about" as meaning more or less than a definite quantity, and holding that there is no fixed rule for determining the degree of contraction or expansion which may be applied to the term "about." It is conceded that the general verdict is based on about 63 per cent of total disability, and plaintiff insists that in order to harmonize the special verdict with the general verdict, the expression "about 50 per cent" must be held to include 63 per cent, which is the amount they allowed. We cannot agree with this contention. It is obvious that the jury meant that plaintiff was incapacitated by his injuries 50 per cent, and would be able to earn in the future, by some suitable employment, that per cent of his former wages. It is impossible for a jury to determine the precise extent of disability sustained in cases of this kind; it can only be approximated, but where in attempting to fix the extent of disability, the jury do not state the exact amount of wages which, in their opinion, plaintiff will be able to earn, or the amount of wages he will earn less than his former wages, or, in other words, do not fix the amount of his disability in dollars and cents of earning capacity, there is only one way they can approximate the extent of the disability or loss of earning power, and that is by stating it in the form of a fraction or percentage. When they said "about 50 per cent," they meant the same as if they had said "about one-half." If they had intended to find the disability to be 63 per cent, they would not have used the expression "about 50 per cent." It is clear that the general verdict is excessive, and that the correct amount is a mere matter of computation.

After the motion for a new trial had been overruled, defendant offered to show that it employed a doctor to attend plaintiff and also became liable for his hospital expenses. The court thereupon ordered a stay of execution on the judgment until it was shown that these bills, to the amount of $216.65, had been paid and the defendant released from liability. Without any claim that the services were not rendered or that the charges were not proper, plaintiff prosecutes a cross appeal based upon the summary manner in which the court disposed of the matter, and contends that it was unfair to him for the court to make the order without the formal introduction of evidence, and also that it was a question which should have been submitted to the jury. The main purpose of calling a jury in a compensation case is to determine disputed questions of fact raised by the pleadings, and the issues are usually confined to the inquiry whether plaintiff's injuries were occasioned by an accident arising out of and in the course of his employment, and particularly to the question of the extent of his disability. No issue was raised by the pleadings involving the right of defendant to have credit for the expenses incurred for medical care furnished the plaintiff. But if the plaintiff received the benefit of the services furnished, justice and fair dealing, as well as the provisions of the statute, require him to credit the judgment with the amount of the expense, or to pay the expense himself. The spirit and purpose of the compensation act will not permit him to take any technical advantage of the manner in which the order was made. In a similar situation in the case of *Bundy v. Products Co.,* 103 Kan. 40, 43, 172 Pac. 1020, the plaintiff was required to remit from the judgment the amount of a like claim under the provisions of section 5906 of the General Statutes of 1915, which section declares that "in fixing the amount of the payment, allowance shall be made for any payment or benefit which the workman may receive from the employer during his period of incapacity." (To the same effect, see *Cain v. Zinc Co.,* 94 Kan. 679, 146 Pac. 1165.)

The judgment will be modified by reducing it to the amount which the plaintiff is entitled to recover for 390 weeks at $3.25 a week. In all other respects the judgment and orders of the trial court are affirmed.