No. 22,319.

H. M. WILLIAMS, *Appellee*, v. GEORGE W. HANNA, *Appellant*.

SYLLABUS BY THE COURT.

1. MOTION FOR JUDGMENT DENIED—*Time in Which to Appeal*. A ruling on a motion for judgment on the pleadings is an intermediate appealable order, and such ruling must be appealed from within six months, otherwise this court is without jurisdiction to consider it.

2. EXCHANGE OF PROPERTY—*False Representations—"Puffing" Goods—Caveat Emptor—Instructions*. A requested instruction to the jury which ignored the facts in evidence and included inapplicable rules of law relating to *caveat emptor* and to the right of a trader to "puff" and extol his goods, examined, and held that such instruction was properly refused.

3. SAME—*Rulings on Testimony*. Objections to the admission of certain testimony considered and overruled.

4. SAME—*Excluded Evidence*. Error cannot be based on the exclusion of evidence unless that evidence is brought on the record and presented to the trial court in support of the motion for a new trial.

5. SAME—*Method of Determining Wholesale Value of Merchandise*. An instruction touching the proper method of determining the *wholesale* value of certain merchandise by making a percentage deduction from the retail value, examined, and held not erroneous in view of the evidence.

6. SAME—*Error in Computing Damages—Corrected Without New Trial—Plaintiff's Option*. Where certain items of value which should be considered in calculating the damages are ignored by the jury, and the amount is not in dispute, and the judgment can be accurately modified in conformity thereto, a new trial is not necessarily required. In such case, the plaintiff may have his option of a reduced and modified judgment, with the alternative that a new trial be granted.

7. SAME—*Representation as to Value of Merchandise—Referred to Wholesale Value.* The evidence and circumstances touching the exchange of certain property for a stock of merchandise represented to be of the value of $4,000 considered, and held sufficient to prove that it was intended by the vendor, and relied upon by the vendee, that the $4,000 valuation referred to the wholesale value of the merchandise.

8. SAME—*Plaintiff's Option as to Reduction of Judgment.* Plaintiff given option of a modified judgment, with the alternative of a new trial.

Appeal from Clay district court; FRED R. SMITH, judge. Opinion filed November 8, 1919. Modified and conditionally affirmed.

*R. C. Miller,* of Clay Center, for the appellant.

*Hal E. Harlan,* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff traded some heavily incumbered properties in Greenwood county to defendant in exchange for some town lots, buildings, and a stock of merchandise in Riley county, and got the worst of the bargain; hence this lawsuit.

The record and briefs are somewhat lengthy, but the case presents no unusual difficulties. In 1914 the plaintiff owned a quarter section of land in Greenwood county, subject to two mortgages for $800 and $780, respectively; he also owned 80 acres in the same county, subject to mortgages for $1,400 and $200. He also owned a residence and some town lots in Eureka, subject to a mortgage of $1,100. The interest on these mortgages and the taxes on these properties were in default.

The defendant owned a house and store building and a stock of merchandise in the village of Bala, in Riley county, and had placed that property in the hands of an agent, J. M. Dever, for sale or trade. The plaintiff advertised his property in a newspaper. In reply, he received a letter from Dever containing a list of properties for trade. This list included the defendant's property, thus described:

"No. 4. Good running stock of Gen. Mdse. about $4000 in frame store building 22 x 60 with hall over head, dwelling of 7 rooms good repair on 5 lots in small town in Riley Co. Ks. total about $10,000. $10,000 will consider equity in good farm in N. E. Kans. if price is right. Will trade this with any or all of the above."

The plaintiff came to Clay Center, where Dever and defendant resided, and a bargain was effected, in which the properties were exchanged. To equalize the supposed values of the respective properties, and in consideration of $500 furnished by defendant to pay plaintiff's defaulted taxes and interest, the plaintiff gave defendant a mortgage for $1,700 on the Riley county realty which plaintiff had received in the deal.

Plaintiff's alleged grievance is that the defendant and his agent falsely represented to him, as an inducement to make the deal and upon which representation he relied, that the stock of merchandise was of the wholesale value of $4,000, when in fact the wholesale value did not exceed $1,500. Plaintiff asked for $2,500 damages. The verdict of the jury was in his favor, and the trial court gave him judgment against the defendant for that sum.

The defendant appeals.

The first error assigned is the overruling of defendant's motion for judgment on the pleadings. The court discerns no infirmity in the pleadings. Plaintiff sufficiently pleaded the necessary allegations to state a cause of action. Furthermore, the trial court's ruling on that motion was made on the ———— day of ————————, 1917, and no appeal was taken on that ruling within six months, and that would bar its consideration now. (*Slimmer v. Rice,* 99 Kan. 99, 160 Pac. 984; *Norman v. Railway Co.,* 101 Kan. 678, 168 Pac. 830.)

The second error complained of relates to the trial court's refusal to give an instruction to the jury covering defendant's contention as to the *facts* as well as his theory of the law. This instruction has been carefully examined. It is faulty in several particulars. For example, it recites: "I instruct you . . . that they [plaintiff and defendant] . . . each party valued his property in the aggregate," etc. The plaintiff's testimony disputed that contention of fact. The requested instruction also involved the rule of *caveat emptor* and elaborated on the right of a trader to "puff" his goods. But plaintiff had pleaded, and he testified, that the representation was made to him by defendant and his agent that the stock of merchandise was a $4,000 stock of goods; he also testified that he made the deal in reliance upon that representation; that while he looked over the stock of goods by lamplight for an

hour or so, he had no experience as a merchant and no knowledge of the value of such merchandise. Certainly, then, the rule of *caveat emptor* did not apply, nor did the rule apply which permits a trader to "puff" and extol his property with impunity.

It has been held repeatedly by this court that one unskilled in values is not precluded from maintaining an action grounded on false representations as to values, on which he relied, merely because before closing the contract he had made a casual inspection of the goods or property whose value was falsely represented by the vendor. (*Speed v. Hollingsworth*, 54 Kan. 436, 38 Pac. 496; *Circle v. Potter*, 83 Kan. 363, 368, 369, 111 Pac. 479; *Morrow v. Bonebrake*, 84 Kan. 724, 115 Pac. 585.)

In *Foote v. Wilson*, 104 Kan. 191, 178 Pac. 430, it was held that a farmer, inexperienced in the value of merchandise, who traded his farm for a stock of goods, could maintain an action against the vendor for false representations as to the value of the goods, when the farmer relied thereon, although the farmer did make a partial inspection of the stock and was not prevented from making a full and free inspection.

Appellant's next complaint pertains to the admission of certain testimony. Over objection of defendant, the plaintiff was permitted to show how he calculated the damages he sustained. Plaintiff produced an inventory of the goods and fixtures on hand. He had taken possession of the merchandise on August 29, 1914; the invoice was taken between the 10th and the 15th of January, 1915; he told how he estimated the value of the goods taken from the store for the use of his own family; he showed what new goods had been received, and what the cash sales were; and upon those facts he made his calculations touching the value of the goods which he had received from defendant. In conducting the store and in making the invoice he had some assistance from others, and some of these testified. Altogether, the facts were fairly well connected, so that a jury could properly be permitted to consider such evidence. Of course, such testimony would furnish a fine opportunity for defendant's counsel to argue its fallibility, its weakness, and the little credence that should be attached to it; but the question this court has to consider is the admissibility of such evidence, not its potency to convince. The wholesale value of the merchandise was determined by deducting twenty-five per cent

·from the retail value. There was some competent testimony to justify that method of calculation. There is no material error indicated under this assignment.

Another error is urged on the exclusion of evidence offered by appellant to show what value he placed upon the Greenwood county properties which he acquired from plaintiff. Such testimony would not be material under the issues raised by the pleadings. (*Miller v. Thayer,* 101 Kan. 355, 168 Pac. 277.) However, the excluded evidence was not presented by affidavits or oral testimony in support of the motion for a new trial. That bars its consideration now. (*Scott v. King,* 96 Kan. 561, 567, 152 Pac. 653.)

The fifth error assigned is an objection to the instruction wherein the court told the jury that if the evidence established the plaintiff's theory of the case, the plaintiff's damage should be measured by "the difference between the wholesale value at which said stock of goods, wares and merchandise in question was taken in exchange" of properties and "the true wholesale value of said stock of goods." If the evidence warranted any reference to that subject, the court's statement of the law was not inaccurate. That point will be considered later in this opinion.

In the closing argument for plaintiff a colloquy arose between counsel for the parties. Counsel for plaintiff stated to the jury that the invoice of the merchandise totaled $1,357.04, and deducting that amount from $4,000, the value of the goods as represented by defendant, the remainder would be $2,642.96, as the amount of plaintiff's damages. Counsel for defendant interrupted to call attention that such argument left out all consideration of the sum of $693 which was the invoice value of certain articles loosely defined as "fixtures." Counsel for plaintiff retorted: "The fixtures have nothing to do with it. The fixtures are still in the building and Mr. Hanna owns them." Counsel for defendant then—

"Appealed to the court and record and stated that the statement and argument of Mr. Harlan [Counsel for plaintiff] made at that time was unfair to the defendant and while Mr. Miller [Counsel for defendant] was addressing the court, the court directed Mr. Harlan to proceed with his argument, and Mr. Harlan did proceed with his argument, and Mr. Harlan did proceed with the same line of argument with the apparent approval of the court."

Williams v. Hanna.

Defendant urges, with truth, that no such suggestion had been made in the opening statement of counsel. At that time, in outlining to the jury what the evidence for plaintiff would show, counsel for plaintiff said:

"When he took an invoice and found that instead of being $4,000.00 worth of goods, there was something like twelve or fourteen hundred dollars worth of goods all told—somewhere in that neighborhood, I believe the evidence will show . . . And he asks damages at your hands for the difference between the value of the goods as they were represented to be, four thousand dollars, and the amount which the evidence will show them to be actually worth at the time, somewhere in the neighborhood of $1,200.00, making a claim in favor of the plaintiff in this case of $2,500.00."

The property characterized as "fixtures" included lights, oil, scales, counters, show cases, refrigerator, shelves, seats, stove, table, safe, cheese cutter, paper cutters and oil barrels. Their value was $693, as inventoried by plaintiff. He got them with the rest of the property, real and personal, in the deal with defendant. They are all, or practically all, articles of personal property, and under the circumstances they pertained to and were a part of the stock traded to plaintiff. They were not given to him *gratis;* they were part of the consideration. No reason occurs to the court why they should be disregarded in computing the amount of plaintiff's damage. Certainly the voluntary statement of counsel for plaintiff, in his closing argument, that "the fixtures are still in the building at Bala and Mr. Hanna owns them," does not solve this difficulty. Plaintiff acquired these "fixtures" from defendant. How they happen to be still in the building at Bala, and how it may have transpired, if true, that Mr. Hanna has reacquired the ownership of them, are immaterial conjectures so far as concerns this action for damages. The court is of opinion that the invoice value of these so-called "fixtures" must be taken into account in determining the proper amount of the judgment. But as plaintiff's calculations were adopted by the jury, and undoubtedly they would have given him a verdict for $2,642.96, but for the fact that he only asked $2,500, it seems just that the value of the fixtures, $693, should be deducted from the sum of $2,642.96, not from the $2,500; and this deduction would reduce defendant's liability to $1,949.96.

Some other errors are assigned, but only one of them need be considered. That one is that the verdict is contrary to the evidence, and it is really the only difficult question in this whole lawsuit. Counsel for appellant "rings all the changes" on this contention, not only under this assignment, but argues it vigorously under almost every assigned error in his brief. He says that "there is not a scintilla of evidence" that the defendant or his agent "ever represented that $4,000 was the wholesale value of the stock of merchandise." This contention is only literally true. The word "wholesale" was never mentioned by either party. But the merchandise was represented to be a $4,000 stock of goods. While defendant denied that, and denied that he overstated the value of the goods, and showed that the merchandise was only insured for $1,500, and that the policy was assigned to plaintiff—which would tend to corroborate his testimony, and to discredit that of plaintiff—and while defendant's evidence tended to show that the taking of an invoice before closing the bargain was waived by plaintiff, not because of his reliance upon defendant's representations as to values, but because defendant declared that if the merchandise had to be invoiced, the true value of the mortgaged properties in Greenwood county would likewise have to be critically inquired into, yet this question of fact was for the jury, not for this court; and the jury, upon ample testimony, found the fact of representation of value as contended by plaintiff. That this representation as to value meant "wholesale value" was deduced from the circumstances. It was shown that the plaintiff traded for the business as a going concern; that he planned to continue the business; and that it was arranged that defendant's man in charge should continue to conduct the business until plaintiff could move his family to Bala and take personal charge. From these circumstances, the jury and trial court reached the conclusion that the goods were traded to plaintiff on such terms as would permit him to sell them at a profit in the usual course of business. A majority of this court decline to say that these circumstances did not establish the fact that defendant meant "wholesale value" when he represented that the merchandise was a $4,000 stock of goods; and, therefore, the court declines to interfere with the determination of the jury and the trial

court on this controverted point. In *Perkins v. Accident Association*, 96 Kan. 553, 555, 152 Pac. 786, it was said:

"It can avail naught that this court might think the evidence rather meager to warrant that conclusion. This was a case where judges [or triers of the facts] might entertain an honest difference of opinion, but the determination of the facts was strictly within the province of the trial court, and its finding is conclusive."

Nothing further is urged which needs discussion. The error in omitting the value of the "fixtures" will not necessarily require that a new trial be granted. That can be corrected by a reduction of the judgment, unless the plaintiff prefers to have a new trial. (Civ. Code, §§ 307, 581, Gen. Stat. 1915, §§ 7209, 7485; *Malot v. Haney*, 98 Kan. 20, 23, 157 Pac. 386; *Truman v. Railroad Co.*, 98 Kan. 761, 767, 161 Pac. 587; *Griffith v. Railroad Co.*, 100 Kan. 500, 511, 166 Pac. 467; *Bothe v. True*, 103 Kan. 562, 564, 175 Pac. 395; *Gadberry v. Egg Case Filler Co.*, 104 Kan. 72, 76, 177 Pac. 834; *Otis v. Otis*, 104 Kan. 88, 90, 177 Pac. 520.)

The case will be remanded to the district court, with instructions to give the plaintiff the option of a modified judgment fixing his damages at $1,949.96, with the alternative that a new trial be granted.

PORTER, J. (dissenting in part) : I concur in the decision and the judgment except that I am of opinion the value of the so-called "fixtures" should be deducted from the face of the judgment.

DAWSON, J. (dissenting in part) : In my opinion, neither the evidence nor the circumstances justified the plaintiff's contention that $4,000 was represented to be the "wholesale value" of the stock of merchandise. I am satisfied from the record that no such notion entered the mind of either party at the time the trade was made; and whether plaintiff elects to accept a modified judgment, or to demand a new trial, I think we should say that the evidence to support the contention that the deal was made on the basis of "wholesale value" utterly failed. This view would require a further considerable reduction from the amount of plaintiff's judgment.