## No. 28,288.

ESTHER MATHIS and HELEN MATHIS, a Minor, by ESTHER MATHIS, Her Mother and Next Friend, *Appellees*, v. THE ASH GROVE LIME AND PORTLAND CEMENT COMPANY, *Appellant.*

(272 Pac. 183.)

Opinion filed December 8, 1928.

*T. R. Evans*, of Chanute, for the appellant.

*F. J. Oyler*, of Iola, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant from a judgment in a workmen's compensation case, assigning error in overruling defendant's demurrer to the evidence of the plaintiff, in giving certain instructions, and in overruling the motion for a new trial. The defendant stood on the demurrer and did not introduce any evidence. After the jury had been instructed it rendered a verdict for plaintiffs in the sum of $3,084.

The appellant states the grounds of this appeal in two questions: Is the employer liable under the compensation law for injury due to lightning stroke? and, Was the deceased engaged in any employment in the course of the employer's trade on, in or about a railway, factory, mine, or quarry at the time of the injury?

A brief statement of the facts will be necessary for the consideration of both these questions. The defendant was a cement company with its cement plant immediately north of Chanute. It owned and operated two quarries—No. 1, a short distance north of the cement plant, called the north quarry; the other located about three-quarters of a mile west, being No. 2, and called the west quarry. Jesse Mathis had worked for the defendant company for two or three years prior to his death on May 30, 1926. His wife, and daughter by her mother as her next friend, are the plaintiffs in this action.

The company owned and operated a narrow-gauge railroad with steel rails between the west quarry and the plant and up to the north quarry, on which it used engines and cars to transport the rock from the quarries to the cement plant. There was a third steel rail, making a standard-gauge road for the moving of the steam shovels. This railroad line ran for some distance along Plummer avenue and on west to the west quarry. From Plummer avenue west to the west quarry there was no other method of travel provided. It was the direct route between the two quarries. There was a road a quarter of a mile south, but it was out of the way and never used for travel between the quarries. When the dinkey engines and trains were running the workmen frequently rode on the engine or cars.

The deceased was a shovel-crane man at one of the quarries. His regular work included, every alternate Sunday, that of boiler watchman in both quarries, which was to keep a bank of fire under the boilers and steam and plenty of water in the boilers over Sunday.

This necessitated his going back and forth between the two quarries all day Sunday. He had been seen at the west quarry on Sunday, May 30, 1926. His body was found at 3:10 p. m. about a quarter of a mile east of the west quarry, lying on the ground north of the railroad track, his head toward the east. This place was about 300 feet west of Plummer avenue. His body was found by two workmen in the west quarry, who had been using drills propelled by electricity and had suddenly discontinued such work about 3 p. m. because of a very severe bolt of lightning, and had gone east on the railroad track. There were evidences of the lightning striking the deceased on the right side of the head and right shoulder, leaving marks of its course to the left heel.

The electric high line from Parsons ran along Plummer avenue, and there was a telephone line on the other side. The defendant company had a high-power line running a quarter of a mile south of the point where the body was found, and the power used in the quarries ran from that line to the quarries in a cable on the ground. The railroad ran under the high-tension electric line for quite a distance on Plummer avenue. One of these two workmen, before reaching the body, saw the lightning strike the high line on Plummer avenue about 450 feet away. It burned the insulation on the bracket. The same witness knew of the company's high line being struck twice within about a year and a half or two years, burning out the transformers. There was testimony that electric current was frequently felt during thunderstorms by those riding on the dinkey engines on this railroad. One witness testified as follows:

"It seemed like it was a little bit more severe there than at about any other place that I ever was."

The first question here involved has never been decided in this state. In the opinion in the case of *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801, it was briefly stated, by way of distinction between the facts in that case and others:

"The case is not similar to those in which a workman while engaged in his employment is injured by some unexpected extraneous agency, such, for instance, as a stroke of lightning, or the sportive act of a fellow employee, when there is no causal connection between the injury and the condition under which he was required to work." (p. 213.)

It there refers to a stroke of lightning as an unexpected extraneous agency, but in the same sentence limits it to times when there is no

causal connection between the injury and the condition under which the injured one is required to work. There is no contention in this case about the injury being an accident as required to bring the case under the provisions of the compensation law, but, as suggested above, the main feature necessary to be shown is the causal connection between the injury and the conditions under which the injured is required to work. The circumstances in the case just cited were "having to wade through foul and impure flood water which had overflowed the yards of the defendant's car works, where he was employed; that at the time an old injury to his foot had not healed; and that infection followed, as a result of which amputation became necessary." (p. 211.) The court held this to be an accident within the meaning of the term employed in the compensation statute, that it was one arising out of and in the course of the employment, and approved the definition of an accident as "an unlooked-for and untoward event which is not expected or designed."

In the case of *White v. Stock Yards Co.*, 104 Kan. 90, 177 Pac. 522, it was held:

"An employer is liable under the workmen's compensation act for injuries sustained by an employee from an electric shock caused by a mischievous prank of his fellow workmen, when it is shown that the perpetration of such pranks had become a custom on the employer's premises, and consequently had become an incident to the employment." (Syl. ¶ 1.)

In *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372, a seventeen-year-old girl, paid by the hour, ate her noon lunch in the factory and remained there during the noon hour and was injured while riding on a truck, a custom known to the employers. It was held that the accident occurred in the course of her employment.

In *Stark v. Wilson, Receiver*, 114 Kan. 459, 219 Pac. 507, the street-car conductor, without any fault of his, was stabbed while operating his car, and it was held to be an accident arising out of and in the course of his employment.

A workman in a mine, after he quit work for the day, descending the shaft for the purpose of ascending to the top, accidentally came in contact with a piece of slate. It was held to be an accident arising out of and in the course of his employment. (*Sedlock v. Mining Co.*, 98 Kan. 680, 159 Pac. 9.)

"A workman engaged in mining coal in a strip pit quit his ordinary work at the end of the day and with other employees rode upon an engine towards the other end of the pit with a view of ascending to the surface, as was the

custom in the mine, and while on his way the engine on which he was riding collided with cars which had been insecurely placed upon a switch line, and he suffered an injury. *Held,* that the accident arose out of and in the course of his employment and that he is entitled to compensation for the injury under the provisions of the workmen's compensation act." (*Chance v. Coal & Mining Co.,* 108 Kan. 121, syl. ¶ 1, 193 Pac. 889.)

"In a case under the workmen's compensation act it was shown that the factory where the plaintiff was employed was located sixty feet distant from another factory; that between them was maintained a runway across which the employees of both factories took material from one to the other; and that plaintiff while so engaged was accidentally thrown from the runway and injured. *Held,* that he was injured by an accident arising out of and in the course of his employment on, in or about the factory of the defendant." (*Gadberry v. Egg Case Filler Co.,* 104 Kan. 72, syl. ¶ 1, 177 Pac. 834.)

The distinction is very forcibly shown in the recent case of *Sellers v. Reice Construction Co.,* 124 Kan. 550, 262 Pac. 19, where a workman went to remove the foreman's automobile out of the way of an approaching truckload of heavy timbers, which might injure the automobile. The load of timbers had no relation to the construction work being done by the defendant company, in which the injured one was a laborer or helper, and of course there was no causal connection between his regular employment and the injury received in taking the automobile across a railroad track. The same distinction is drawn in *Bevard v. Coal Co.,* 101 Kan. 207, 165 Pac. 657, where a workman was sent from one mine to another on an errand and was injured by a train in crossing a railroad track. It was held there was no causal connection. See, also, *Peavy v. Contracting Co.,* 112 Kan. 637, 211 Pac. 1113.

From the above cases it is quite plain that accidents similar in effect to lightning and such as are the direct result of unexpected extraneous agencies are within the rule of liability or not, depending upon the causal connection between the injury and the conditions and circumstances of the required work.

The decisions of other courts in lightning cases are by no means uniform, but there appears to be running through all of them a more or less distinct line of demarcation in the application of this causal connection, with the general result that lightning may be an accident arising out of an industrial employment if the employment is such that lightning is a risk peculiarly incident thereto. If, in this case, the lightning had struck one of the two witnesses who were drilling in the west quarry with electric drills when a sharp stroke of

lightning occurred that afternoon (probably the one that caused the fatality) there would have been left no room for discussion as to lightning being a risk peculiarly incident to their work. The instant case requires the consideration of the further matters of surroundings and peculiar conditions, and if they show a risk peculiarly incident thereto and different from other surroundings and the exposure of people generally in the same community, then it will apply to this injury as well as to those arising from use of the electric drills.

In the case of *Alzina Construct. Co. v. Industrial Com.*, 309 Ill. 395, it was held that one wheeling cement from a car to a house twenty feet high was not thereby exposed to a risk from lightning peculiarly incident to the employment.

In *Hoenig v. Industrial Commission*, 159 Wis. 646, it was held that plaintiff's husband, who was struck by lightning and killed while employed by the defendant company at work on a dam, was not killed in consequence of any hazard peculiar to his employment and differing from the hazard incident to other outdoor work during a thunderstorm.

In *Griffith v. Cole Bros.*, 183 Ia. 415, it was held a workman on the construction of a bridge, who was struck by lightning after the work of the day was ended and while sitting in the boarding tent of the company, was not entitled to recovery.

In the case of *Klawinski v. Lake Shore, etc., R. Co.*, 185 Mich. 643, it was held:

"A section laborer upon a railroad who had taken refuge in a barn during a storm was not entitled to compensation under the employer's liability law for his death caused by a stroke of lightning which struck the barn; the injury or accident did not arise out of or in the course of his employment, nor was death by lightning peculiar to the industry or occupation in which he was engaged." (Syl.)

It was held in *Thier v. Widdifield*, 210 Mich. 355, that there was no liability where one was killed while standing near an electric light wire in the barn when the house was struck and the light wire connected the house and barn. Likewise, in *Wiggins v. Industrial Accident Board*, 54 Mont. 335, there was no liability where one was working on the public highway with a steel grader, because he was not exposed to more than the normal risk to which the people of the community were generally exposed.

On the other hand, it was held in the following cases that the

injured person was subjected to a greater hazard from the act of God than ordinarily applies to the general public: Where he was excavating a pipe line with a steel shovel (*United States Fidelity & Guaranty Co. v. Rochester*, [Tex. Civ. App.] 281 S. W. 306); where he was working as a carpenter on a shed which had a twisted wire cable looped about its rafters near the peak and passing therefrom within a short distance of where the carpenter was working (*Emmick v. Hanrahan Brick & Ice Co.*, 201 N. Y. Supp. 637); a number of cases where drivers of ice wagons and other trucks or teams took shelter under trees during storms (*Matter of Madura v. City of New York*, 238 N. Y. 214; *State, ex rel. Peoples Coal & I. Co., v. District Court*, 129 Minn. 502; *De Luca v. Park Commissioners*, 94 Conn. 7).

What, if any, were the conditions and circumstances in this case which might show that the employment was such that lightning was a risk peculiarly incident thereto? Among others, the only way to go from one quarry to the other was on or along the railroad track. The railroad track ran from one quarry to the other, both of which quarries were connected with electric lines for drilling purposes, and the railroad ran for some distance under the high line on Plummer avenue. The workman was killed close to the railroad track at a point 300 feet from the Parsons high line on Plummer avenue and the telephone lines on the same avenue. The high line of the defendant company was a quarter of a mile south of where the deceased's body was found, and the two cables from this high line to the quarries were lying on the ground, one a quarter of a mile west of him and the other a half mile east of him. Another stroke that afternoon struck the Parsons high line less than 450 feet from where he was found. The company line had been struck at different times. During thunderstorms the shocks were felt by those riding on the dinkey engine on the railroad. One witness thought the lightning was a little bit more severe there than any other place he had ever seen. These conditions and circumstances on a demurrer to the evidence must be taken as true, and they meet the requirements as outlined and defined in the cases above cited; and when there was no evidence to the contrary they were sufficient to sustain the verdict in favor of the plaintiffs.

The matters involved in the second question propounded by the appellant for consideration in this case were necessarily interwoven

with the study of the first except as to the deceased being engaged in the course of his employer's trade or business on, in, or about the quarries at the time of the injury. He was going from one quarry to the other. It is not shown how often it was necessary for him to bank the fires and look after the water and steam in the boilers, but he was going from one to the other for that purpose and in the only way provided for him to go. He was not going off or away from his employer's property; as in some of the cases cited above. His going from one quarry to the other was strictly within the rulings in the strip-mine case, above cited, and the case of the elevated runway between two factories, above cited. It is also within the holding of the case of *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190. The evidence plainly shows the deceased was engaged in the course of his employer's business on, in or about the quarries at the time of his injury. We think there was no reversible error in the trial.

The judgment is affirmed.

BURCH, J., dissenting.