[Civil No. 2206.    Filed December 10, 1924.]

[230 Pac. 1099.]

## UNITED EASTERN MINING COMPANY, a Corporation, Appellant, v. WILLIAM HOFFMAN, Appellee.

MASTER AND SERVANT—CARPENTER, CONSTRUCTING TOWER FOR TRAMWAY, NOT ENGAGED IN "HAZARDOUS" WORK "ABOUT" MINE, WITHIN EMPLOYERS' LIABILITY LAW. — Carpenter, constructing tower for aerial tramway to be used in conveying ore from mine to mill, *held* not engaged in hazardous work "about" mine, within Employers' Liability Law (Civ. Code 1913, par. 3156); "about" meaning work of general character done or carried on in danger zone incident to operating mine.

See (1) 1 C. J., p. 338; Workmen's Compensation Acts, p. 42.

APPEAL from a judgment of the Superior Court of the County of Mohave.    E. Elmo Bollinger, Judge. Judgment reversed and cause remanded with directions to dismiss complaint.

1. What constitutes hazardous employment within. meaning of Workmen's Compensation Act, see note in L. R. A. 1918F, 230.

Mr. R. L. Alderman and Mr. C. W. Herndon, for Appellant.

Mr. S. D. Stewart, for Appellee.

ROSS, J.—The appellee, Hoffman, sued appellant mining company for damages for personal injuries. The trial was had before the court with a jury, which resulted in a verdict in favor of the plaintiff. The defendant mining company appeals from the judgment.

Plaintiff states his cause of action under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162); the paragraph of his complaint describing his work and how he was injured being as follows:

"That on and prior to October 20, 1921, plaintiff was in the employ of defendant as a mine workman, mechanic, and carpenter, and upon said date was engaged, with other workmen of defendant in and about defendant's said mine, in the construction and erection of an aerial tramway for use in connection with defendant's mining and milling operations, and that while so engaged, and while working upon one of the tramway towers, which was still in an unfinished condition, plaintiff was struck by a piece of timber, so that he lost his balance and fell to the ground with a certain other, heavy, insecurely fastened timber and the tools with which plaintiff was working, and was thereby severely injured and bruised. . . . "

There was not much material evidence, and what there was is singularly undisputed, and may be stated in very small space. The defendant was constructing an aerial tramway, from its Big Jim mine to its milling plant, to be used in conveying ore from the Big Jim mine to the mill; the plaintiff being the boss or foreman of the work. The distance between the mine and mill was about one mile. The tramway was to be operated, when completed, by

a cable suspended on towers, of which there were several, ranging in height from twelve to sixty-five feet, depending upon the contour of the country. The tower described in the complaint from which plaintiff fell was twelve feet high, and was located about equidistant between the Big Jim mine and defendant's mill. The timbers for towers were made up, as to length, number and size, at what was called the framing shed, located near the collar of No. 1 eastern shaft, and then conveyed on to the ground selected for location of tower. Timber work of the tower from which plaintiff fell was all up in place, and plaintiff had gone on to it to bolt the timbers together, when something gave way, causing him to fall ten or twelve feet.

The defendant contends that neither the complaint states nor the evidence shows a cause of action under the Employers' Liability Law. It is said the occupation in which plaintiff was engaged when hurt was not a hazardous occupation, as defined by the statute.

One of the distinguishing features of the right of action under the Employers' Liability Law is that it must arise out of an occupation that is hazardous. The occupations named in the Constitution as hazardous are "occupations in mining, smelting, manufacturing, railroad or street railway transportation, or any other industry." The statute (paragraph 3156, Civil Code) enacted at the first session of the legislature selected and enumerated occupations within those industries named in the Constitution, and some that fall under the head of "any other industry," and is as follows: .

"The occupations hereby declared and determined to be hazardous within the meaning of this chapter are as follows:

"(1) The operation of steam railroads, electrical railroads, street railroads, by locomotives, engines,

trains, motors, or cars of any kind propelled by steam, electricity, cable or other mechanical power, including the construction, use or repair of machinery, plants, tracks, switches, bridges, roadbeds, upon, over and by which such railway business is operated.

"(2) All work when making, using or necessitating dangerous proximity to gunpowder, blasting powder, dynamite, compressed air, or any other explosive.

"(3) The erection or demolition of any bridge, building or structure in which there is, or in which the plans and specifications require, iron or steel framework.

"(4) The operation of all elevators, elevating machines or derricks or hoisting apparatus used within or on the outside of any bridge, building or other structure for conveying materials in connection with the erection or demolition of such bridge, building or structure.

"(5) All work on ladders or scaffolds of any kind elevated twenty feet or more above the ground or floor beneath in the erection, construction, repair, painting or alteration of any building, bridge, structure or other work in which the same are used.

"(6) All work of construction, . . . alteration or repair where wires, cables, switch-boards, or other apparatus or machinery are in use charged with electrical current.

"(7) All work in the construction, alteration, or repair of pole lines for telegraph, telephone or other purposes.

"(8) All work in or about quarries, open pits, open cuts, mines, ore reduction works and smelters.

"(9) All work in the construction and repair of tunnels, subways and viaducts.

"(10) All work in mills, shops, works, yards, plants and factories where steam, electricity, or any other mechanical power is used to operate machinery and appliances in and about such premises."

This paragraph of the statute, and other parts of the law, make it obvious that it was the intention of the lawmaker to limit the right of action to injuries in occupations that are hazardous.

The plaintiff claims that the work he was doing upon the tower was work "in or about . . . mines . . . " falling under subdivision 8 of paragraph 3156. That he was not working "in" defendant's mine is clear; and that he was half a mile away from the mine, working upon a tower not then in use in mining or otherwise, but to be later utilized when the tramway was completed, is undisputed. The question is whether this latter work was "about" the defendant's mine.

Mining is generally recognized as hazardous. It is particularly named in the Constitution, and is classed along with smelting and manufacturing and railroading. There is certain work in these industries that is hazardous, and certain work that is nonhazardous. The men who wrote the Constitution and enacted the Employers' Liability Law knew this as well as anyone, and their effort was to protect workmen doing work in certain hazardous industries, and not persons whose work, although it might be for a mining or railroad operator or a manufacturer, was not hazardous, or in the zone of hazards peculiar to the industry. The Employers' Liability Law is not a general compensation law reaching all kinds of labor, both hazardous and nonhazardous.

Reverting to the question as to the meaning of the word "about": We find wherever found in a context like or similar to ours it has been construed, when applied to a mine, as fixing—

"the locality of the accident for which compensation may be recovered, and that the accident must occur in such close proximity to the mine that it is within the danger zone necessarily created by those peculiar hazards to workmen which inhere in the business of operating the mine. If the accident occur outside this zone, the distance from the mine, whether very near or very far, is immaterial." *Bevard* v. *Skidmore-P. Coal Co.,* 101 Kan. 207, 165 Pac. 657.

In that case the injured workman was a coal
shoveler in a mine, and the injury occurred within
thirty yards of the mine to which he had been sent
on an errand connected with his employment. The
statute the Kansas court was construing was as
follows:

"This act shall apply only to employment by the
undertakers as hereinafter defined, on or in or about
a railway, factory, mine, quarry, or engineering work.
. . . "

This statute is a rescript of the English statute of
1897 (60 & 61 Victoria, c. 37, p. 57). The Kansas
court, speaking through Mr. Justice BURCH, took up
and reviewed a number of English cases construing this
statute. In one of the cases reviewed, *Fenn* v. *Miller*,
69 L. J. Q. B. (N. S.) 439, the workman was employed
to cart water to a mortar-mill, driven by a steam
engine, from a brook which was 150 to 200 yards
from the mill. While proceeding with a cart of water
from the brook towards the mill, and when about
forty yards from the brook, the cart horse ran away,
and the workman was injured. The mill and engine
constituted the factory, under the statute. The dis-
cussion of the meaning of the word "about" is quite
elaborate, and the conclusion reached was, in effect,
that work which does not involve physical contiguity
to the factory, or is not within the zone of the hazards
peculiarly incident to the work in the factory, is not
"about" the factory.

That our statute is not a general one, covering all
kinds of injuries, but is a restricted statute, is evi-
dent from an analysis of the occupations enumerated
as specifically falling within its purview. Take, for
instance, railroading. There the labor must be, not
only manual or mechanical, as provided in paragraph
3156, but in connection with the operation of the rail-

road with the instrumentalities enumerated, or on structures upon, by, or in which such instrumentalities are repaired or operated. Thus it would not cover a bookkeeper or a bill clerk for the railroad. *Arizona Eastern R. Co.* v. *Matthews,* 20 Ariz. 282, 180 Pac. 159. Quoting again from *Bevard* v. *Skidmore-P. Coal Co., supra:*

"There is no anomaly in distinguishing between trainmen and yardmen working on or about a railroad, and railroad employees working in a distant office building, where they are as secure from the peculiar hazards incident to railroading as the employees of a bank. Likewise a factory drayman, when in the course of his employment elsewhere than at the factory, is no more exposed to extraordinary risk from the nature or condition of the work carried on there than a grocer's drayman. Consequently the act was extended, not to employment in the course of the employer's business generally, or wherever conducted, but the employer's business at designated places."

Or, take the matter of gunpowder and kindred explosives, wherein it is required that the occupation must be in the making or using of the explosive, or work necessitating dangerous proximity to such explosive. There must be actual contact or proximity.

That the work engaged in must be actually of the class to which the plaintiff assigns it in his pleadings and evidence is perhaps more forcibly illustrated by the arbitrary rule concerning work upon ladders or scaffolds in subdivision 5 than any other character of work declared and determined to be hazardous. Under that subdivision, if the work be ever so much less than twenty feet above the ground or floor, it is not classed as hazardous; whereas, if the work upon the same structure is twenty feet or more above the ground or floor it is hazardous. Thus under this heading it is not the character of the work so much

as its altitude above the ground that makes it hazardous. In *Arizona Eastern R. Co.* v. *Matthews, supra,* it was held that a bill clerk, who fell in a scale hole in the depot platform while returning from a restaurant, where he had gone for refreshments, was not at the time engaged in any hazardous occupation named in the statute.

In *New Cornelia Copper Co.* v. *Espinoza* (C. C. A.), 268 Fed. 742, the complaint alleged a cause of action under subdivisions 2 and 8 of paragraph 3156, *supra;* that is, that deceased was working in a mine extracting ores by means of tunnels, open pits, shafts and other excavations, and that gunpowder, blasting powder, dynamite and other explosives, were used for that purpose. The evidence showed that deceased had arrived at the mine before time to go to work and had built a fire to keep warm, "about thirty-five or forty feet to one side of quarry hole, in which the men were supposed to work." Under the wood he had set on fire was some powder, which exploded, killing him. This happened on defendant's mining property. The court held the evidence did not bring deceased within subdivision 2 because, although while at work in mine he was in dangerous proximity to gunpowder and other explosives, at the time of his injury he was on the surface where no mining operations were carried on, and on rehearing the court held "that the deceased . . . was not at work . . . in or about the mine at the time of the accident."

The state's policy, as expressed in the Constitution (article 18, § 7), is to make the employer liable to the employee "in all hazardous occupations" in certain enumerated industries (and any others selected by the legislature), when the injury is caused by an accident due to the condition or conditions of the occupation, and not the negligence of the employee. The occupation, whether it be in the indus-

tries named in the Constitution or in other industries selected by the legislature, must be hazardous, not only in fact, but by declaration and determination of the legislature. The plaintiff was engaged in construction work as a carpenter. All construction work is not hazardous, and the legislature has not so classed it. In paragraph 3156, *supra,* in subdivision 5 construction work on ladders and scaffolds twenty feet above the floor or ground, in subdivision 6 construction work on machinery or apparatus charged with electricity, in subdivision 7 construction work on pole lines for telegraph, telephone, or other purposes, and in subdivision 9 construction work of tunnels, subways and viaducts, are classed as hazardous. It will be seen that the legislature has endeavored to designate the place of work declared and determined to be hazardous in construction work and other work, and has also, in conformity with the letter and spirit of the Constitution, required such place to be in fact hazardous. The only subdivision of paragraph 3156 fixing the location of the occupation as "about" the industry is subdivision 8. "Work . . . about quarries, open pits, open cuts, mines, . . . " does not mean work away from the quarry, open pit, open cut or mine, entirely different in character and completely outside of the zone of dangers peculiar to quarrying stone, or making an open cut or open pit, or extracting ores from the bowels of the earth. If plaintiff is entitled to recover, then the teamster hauling timber or groceries to the mine, if injured by runaway team, or the clerk in the commissary upon whose toe a box should fall, would be entitled to recover.

We are satisfied "about," in the context in which it is used, was intended to mean work of the general character done or carried on in the danger zone incident to operating a mine. It is a broader word than

"in," but not broad enough to reach work unrelated to mining in proximity or character. It covers work that subjects the workmen to the dangers incident to a mine, but not work away from the mine and any of the dangers or hazards incident thereto. It is obvious that the work plaintiff was engaged in at the time he was hurt did not bring him into the range of any of the peculiar dangers and hazards incident to operating a mine, and that therefore he is not entitled to recover in this action.

The judgment of the lower court is reversed and the cause remanded, with directions that the complaint be dismissed.

McALISTER, C. J., and LYMAN, J., concur.