No. 21,291.

## MRS. J. T. BEVARD, *Appellant*, V. THE SKIDMORE-PATTERSON COAL COMPANY, *Appellee.*

### SYLLABUS ·BY THE COURT.

COMPENSATION ACT—*On, In or About a Coal Mine—Injured Workman Not Within Provisions of Act.* The defendant operates two open-pit coal mines, known as the east mine and the west mine, which are about a quarter of a mile apart. They are separated by an ·interurban railway, which passes within about thirty yards of the west mine. A workman in the east mine was ordered by his foreman to go on a necessary errand to the west mine. When crossing the railway track the workman was struck by a car, and sustained injuries which proved fatal. In an action for compensation under the workmen's compensation act, the petition, which was otherwise sufficient, presented the foregoing facts. *Held*, a demurrer to the petition was rightfully sustained, because the accident did not occur on or in or about a mine, within the meaning of section 6 of the act (Gen. Stat. 1915, § 5900).

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed June 9, 1917. Affirmed.

*C. A. McNeill,* and *Maurice McNeill,* both of Columbus, for the appellant.

*A. H. Skidmore, S. L. Walker,* both of Columbus, and *F. A. Walker,* of Weir City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for compensation for the death of a workman. A demurrer was sustained to the plaintiff's petition and she appeals.

The petition disclosed that the defendant operates two open-pit coal mines, referred to as the east mine and the west mine, which are a quarter of a mile apart. Between the two mines and about thirty yards east of the west mine lies the interurban railway track of the Joplin & Pittsburg Railway Company. The railway had been in operation about ten years before the mines were opened, and cars passed the west mine at intervals of thirty minutes throughout the day. The workman was a coal shoveler at the east mine, and did such other work as was

required of him. He was ordered by his foreman to take a coal drill from the east mine to the west mine and there procure a different tool. When crossing the railway track he was struck by a car, under circumstances which are not described, and sustained injuries which proved fatal. There was no allegation in the petition that the workman took a previously defined route between the two mines, or a connecting way, or a course of travel bearing any relation to the business of working the two mines. There was no allegation of any joint system of operation extending over the two mines, or of any nexus between them. There was no description of the mines which indicated that mining operations or mining hazards overflowed either of the pits in the direction of the railway track.

The first section of the workmen's compensation act reads as follows:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation to the workman in accordance with this act." (Gen. Stat. 1915, § 5896.)

The plaintiff argues the case as if it were controlled by the specification, "accident arising out of and in the course of employment." Adopting this theory provisionally, there can be no doubt that the accident arose in the course of the workman's employment. When he was injured he was in the act of performing a duty within the scope of his employment and expressly enjoined upon him by his foreman.

Whether or not the accident arose out of the employment is debatable. "Out of" and "in the course of" employment are distinct things and must not be confused. An accident may occur in the course of employment and still have no causal connection with it, so that it may be said the accident arose out of the employment. The accident must occur because of some peculiar danger incident to the particular employment, and it might be urged here that the employment did not constitute proximate cause. Being run down by a car on an interurban railway track was not a special danger peculiar to the business of mining, or to the conduct of a mine employee going from one mine to another with a drill. Precisely the same peril would confront a farm hand going from the country to town with

a basket of fresh eggs and vegetables. Agricultural pursuits and employments incident thereto are exempt from the provisions of the act because they are nonhazardous (§ 5900), and it would require considerable sophistication to differentiate between the causal connection of employment and accident in the two instances. Indeed, the accident was just as likely to happen to one who was not an employee at all.

A leading English case sustaining the suggested view is that of *Dennis v. A. J. White & Co.* [1916] 85 L. J. K. B. 862. In that case a plumber's mate employed by a firm of builders was told to go on a bicycle and get some plaster. As he was crossing Sloan Square, in London, a motor car collided with him. He used the bicycle on an average about once a day. Following the judgment of the house of lords in the case of *Plumb v. Cobden Flour Mills Co.* [1913] 83 L. J. K. B., n. s., 197, it was held that the accident did not arise out of the employment.

A carefully considered American case which cites pertinent authorities is that of *Hopkins v. Michigan Sugar Co.*, 184 Mich. 87. In that case the decedent was the defendant's chief engineer, having charge of the installation of machinery in, and the operation of, six plants in different cities, which he was obliged to visit. Having spent the day at a branch plant, he returned by train to the city in which the principal plant and his office were situated, and while preparing to take a street car, slipped and fell on icy ground. It was held the accident did not arise out of his employment.

In the case of *Foley v. Home Rubber Co.* (N. J.) 99 Atl. 624, the expression "arising out of" employment was given a very much broader interpretation than in the Michigan case. Foley was a special traveling salesman who, in the course of his employment, found it necessary to visit his employer's London office. He took passage on the Lusitania, and lost his life when the ship was torpedoed by a German submarine. The court held that the common perils incident to travel inhere in employments necessitating travel by sea or by land, that the manner in which the accident is brought about is not at all of the essence of the matter, and that the fact that the Lusitania was lost through extraordinary peril did not make such

peril any less a cause of accident arising out of Foley's employment.

The question just discussed need not be decided because the provisional theory of the case takes into account only a portion of the workmen's compensation act. The opening words are, "If in any employment to which this act applies." It is necessary to inquire, therefore, to what employments the act applies. The inquiry is answered as follows:

"This act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas plant, county and municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain, each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workman engaged therein are inherent, necessary, or substantially unavoidable." (Gen. Stat. 1915, § 5900.)

Looking further into the act, a mine is defined as follows:

" 'Mine' means any opening in the earth for the purpose of extracting any minerals, and all underground workings, slopes, shafts, galleries, and tunnels, and other ways, cuts and openings connected therewith, including those in the course of being opened, sunk or driven; and includes all the appurtenant structures at or about the openings of the mine, and any adjoining adjacent work place where the material from a mine is prepared for use or shipment." (Gen. Stat. 1915, § 5903, subdiv. c.)

In framing the act the legislature made use of the British workmen's compensation act of 1897, section 7 of which contained the following provision:

"This act shall apply only to employment by the undertakers as hereinafter defined, on or in or about a railway, factory, mine, quarry, or engineering work." (Statutes 1897, 60 & 61 Victoriæ, ch. 37, p. 57.)

Before the legislature adapted to its purposes the words, "on or in or about," they had been interpreted by various courts of the United Kingdom. Many of the decisions are enlightening because of their perspicacity.

In the case of *Fenn v. Miller*, 69 L. J. Q. B., n. s., 439, it appeared that a workman was employed to cart water to a mortar mill driven by a steam engine, from a brook which was from 150 to 200 yards from the mill. When proceeding with

a cart of water from the brook toward the mill, and when about forty yards from the brook, the cart horse ran away and the workman was injured. The mill and engine constituted a factory, and the question was whether or not the accident occurred in employment about a factory. Lord Justice Smith said:

"The county court judge has held, as I understand, that inasmuch as the word 'about' is an elastic word, he is entitled to find that a distance of 110 yards is 'about' the mill as being 'in close propinquity' to it, as I interpreted the meaning of the word in *Powell v. Brown,* or as being 'physically contiguous' to it, as Lord Justice Collins expressed it in the same case.  . . .

"In *Powell v. Brown* an accident happened to a workman engaged in loading a cart belonging to the owners of a factory. The cart was standing in a street close to the entrance to the factory yard, at a place where the factory workmen were habitually accustomed to take timber out of the factory and load in on the factory carts. The question was whether the employment of the workman was 'about' the factory within the meaning of the act, and the court held that the word 'about,' following the words 'on or in,' was an enlarging word. The legislature thought that the first two words were not large enough to cover all that they intended to include, and therefore added the word 'about' to enlarge the locality of the accidents included within the act, and so as not to limit the locality to the words 'on or in.' The expression I used was that the word 'about' meant that the employment might be in close propinquity to the factory, and Lord Justice Collins used very similar words—namely, 'physically contiguous to the factory.' There the county court judge had found that the workman was engaged 'about' the factory at the time of the accident, and that finding was right according to the meaning placed by this court on the word 'about.'

"In *Chambers v. Whitehaven Harbour Commissioners,* again, this court held that the words of section 7 of the workmen's compensation act, 1897, pointed to locality. After reading them, I there said: 'The meaning is that at the time of the accident the workman must be employed about one of those specified localities; the locality of the accident must be within the purview of the section.' And afterwards: 'Therefore, in order to bring a particular case within the purview of the act, the employment must be on, in, or about the named locality at the time of the accident.'

"There was also the case of *Lowth v. Ibbotson,* in which a carter in the employment of a miller was injured while delivering sacks of flour from a cart at a distance of a mile and a half from the mill. The county court judge held that he was not at the time of the accident employed 'about' the mill, and this court did not interfere with that finding because it appeared to us to be quite right." (p. 440.)

Lord Justice Collins said:

"In my judgment, the word 'about' in the section with which we are dealing is a geographical expression denoting physical contiguity. On the other hand, it is not, I think, used in the sense in which we use it when we speak of a workman being about the business of his employer. There is a broad distinction between the two meanings of the word. A factory assumes the carrying on of a business, and I should say that a carter fetching coals to the factory is 'about the business of' the factory, but is clearly not during his journeys to and fro 'about' the factory. . . . I should say that where the main purpose of the business carried on in a factory involved the use of land outside the physical limits of the factory, persons so employed outside the factory limits would be employed, not on or in, but about the factory. An illustration of this is to be found in the facts of the case of *Powell v. Brown.* . . . To my mind the act does not apply to persons employed about the business of a factory, where such employment does not involve physical contiguity to the factory within such limits as are reasonably necessary for the ordinary business carried on there. . . ." (p. 441.)

In the case of *Coylton Coal Co. v. Davidson,* 42 Scot. L. R. 596, it appeared that a carter in the employment of the coal company at one of its pits went with his cart along a private road belonging to the company to a point at which it joined a public road, a distance of 259 yards from the pit, crossed the public road, twenty-two yards in width, passed through a gate into a railway company's premises, and at a point 123 yards beyond the gate proceeded to load on his cart a quantity of timber from a railway wagon. While engaged in this work he was accidentally injured. The question was whether or not the accident happened on or in or about a mine, within the meaning of section 7 of the workmen's compensation act of 1897. The Lord Justice-Clerk said:

"The carter had left the mine, and although still on business for the mine owner, was doing the ordinary work of a carter at a place where no dangers connected with a mine were to be encountered. He had not only left the neighborhood of the mine, but he had left the property of the mine owner, had gone to the other side of the road and entered a place which belonged to another owner, and which was itself a place to which the act applied in respect that the owners of that place carried on another dangerous business, for any accident in which the owners were liable to their own employees. How in these circumstances it could possibly be held that he was still at a place which was 'about' the mine which he had left I am unable to understand. He would have been a trespasser where he was, unless he had gone there on business connected with the railway company, and could not have said, if asked to state his

business or to quit the premises, that he was about his master's mine. His only right to stay could be because his master had business with the railway company. But this might equally apply ten miles off or twenty miles off from his master's premises." (p. 598.)

### Lord Kincairney said:

"The question for us is whether the place of the accident was about the company's mine in the sense of the 7th section of the workmen's compensation act. . . .

"None of the dangers incident to a mine could be said to attach to the place of the accident.

"The sheriff-substitute has decided on the ground that the place was connected by use with the pit, but although without such connection it is possible that the statute might not have applied, still it was necessary that the workman should not only be engaged in the course of his employment but also that he should be engaged about his mine." (pp. 598, 599.)

### In the case just referred to Lord Stormonth Darling delivered the following opinion:

"Speaking solely for myself I should have thought, if the question had been open, that there was much force in the argument urged by Mr. Campbell to the effect that section 7 of the act refers not to the locality of the accident but to the kind of employment which is to give a right to compensation. The 1st section has been described by the house of lords in Lyson's case (1901), App. Ca., at p. 85, as 'the affirmative or leading enactment,' and it declares that 'if in any employment to which this act applies personal injury by accident arising out of and in the course of the employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation.' The leading idea of the statute, therefore, is to give compensation to workmen for injury arising out of their employment, even when the employer is entirely free from blame. But inasmuch as the act was not intended to apply to every kind of employment, it became necessary to define the employment to which it did apply, and I should have thought that the sole purpose of section 7 was to do so. When the section speaks of employment 'on or in or about' a railway, factory, mine, quarry, and so on, I should have thought that it introduced the idea of locality only as a means of describing particular trades or occupations, and not in order to restrict the area within which accidents occurring in the course of these particular trades were to give rise to a right of compensation. Such a construction of the statute would undoubtedly have enlarged its scope, but it would at least have avoided the obvious anomaly of allowing compensation for injury when sustained by a workman at one part of a job and refusing it when sustained at another part, although the whole job was ordered by his employer and the employer was equally free from blame throughout. Why so much importance should have been attached to the *locus* of the acci-

dent itself I do not know, for a workman is just as much in his master's employment, acting in the course of that employment, when he is loading goods for him at a distance from his master's premises as when he is delivering the goods at his master's door.

"But I am convinced that it is now too late to go back on the series of cases both here and in England, where the words 'on or in or about' in section 7 have been read as referring to the workman's actual presence at the time of the accident." (p. 599.)

The statute of this state quoted above (§ 5900) answers conclusively for this jurisdiction the question in his lordship's mind, why so much importance should have been attached to the *locus* of the accident. The act is a restricted one. Employments especially and inherently dangerous to life and limb, and none other, were included. The hazards were the necessary and peculiar hazards attending railroading, factory work, mining and the like. There is no anomaly in distinguishing between trainmen and yardmen working on or about a railroad, and railroad employees working in a distant office building where they are as secure from the peculiar hazards incident to railroading as the employees of a bank. Likewise, a factory drayman when in the course of his employment elsewhere than at the factory is no more exposed to extraordinary risk from the nature or condition of the work carried on there than a grocer's drayman. Consequently the act was extended. not to employment in the course of the employer's business generally, or wherever conducted, but the employer's business at designated places. The superficies of a mine was particularly described (§ 5903, subdiv. *c*,) and to ignore the plain limitation to locality would be to ignore the principle of classification which lies at the foundation of the act.

The "on, or in, or about" limitation has been dropped from the British workmen's compensation act, except with respect to premises on which a principal undertakes to do work which he procures to be executed by subcontractors, and has been omitted from American statutes framed in the light of recent models. The omission accounts for the dearth of helpful American authorities. The radical enlargement of the scope of workmen's compensation acts which the omission accomplishes has been sufficiently indicated.

The court concludes that the word "about," as applied to a mine, fixes the locality of the accident for which compensation

may be recovered, and that the accident must occur in such close proximity to the mine that it is within the danger zone necessarily created by those peculiar hazards to workmen which inhere in the business of operating the mine. If the accident occur outside this zone, the distance from the mine, whether very near or very far, is immaterial. In this case the workman was a messenger who had left one mine on an errand and had not arrived at the other. He was injured on the premises of the railway company, which lay between the two mines. The statute defines the term "railway" to include interurban railways (§ 5903, subdiv. *a*), and as in the Coylton Coal Company case referred to above, the workman could not have accounted for his presence on the railway track, a place itself within the statute, by saying he was about his mine. The petition stated no facts from which it may fairly be inferred that the employees and passengers of the railway company are exposed to the peculiar perils to which mine employees are exposed, and the court declines to assume such to be the fact.

The plaintiff cites the case of *Sedlock v. Mining Co.*, 98 Kan. 680, 159 Pac. 9. In that case the sole question was whether or not the accident arose out of and in the course of employment. The workman was injured in a mine, and the court had no occasion to consider the provision of the statute which is decisive of this case.

Because the petition did not disclose that the accident occurred in or about a mine, the petition failed to state a cause of action, and the judgment of the district court is affirmed.