No. 27,498.

MARY SELLERS, *Appellant*, v. THE REICE CONSTRUCTION COMPANY, *Appellee.*

(262 Pac. 19.)

### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Injuries Arising Out of Employment.* The facts in an action for compensation considered, and *held,* the injury which occasioned the workman's death did not arise out of his employment.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed December 10, 1927. Affirmed.

*J. H. Brady* and *T. F. Railsback,* both of Kansas City, for the appellant.

*A. L. Berger,* of Kansas City, and *J. W. Rogers,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The widow of a deceased workman sued the workman's employer for compensation. Judgment was rendered for defendant, and plaintiff appeals. The principal question is whether the injury which occasioned the workman's death arose out of his employment.

The Reice Construction Company was engaged in fulfilling a contract to dig a ditch in what is known as the Fairfax district in Wyandotte county. This district lies between the bluffs which mark the northern and eastern limits of the city of Kansas City, and the Missouri river. Adjoining the northern boundary of the city is the right of way of the Missouri Pacific railroad. The right of way is 100 feet wide, and the track is laid in the center. Hallock road, which is virtually a prolongation of Fifth street in Kansas City, crosses the railroad right of way and extends north through the district. The direction of the railroad at the highway crossing is from northwest to southeast. Just north of the railroad track a road turns off the Hallock road and takes a course between the track and the north boundary of the right of way. The ditch was north of the right of way, and its course was substantially parallel with the north boundary of the right of way. The construction company's contract embraced ditch digging, dike building, road grading,

and similar work. Ditching was done with a ditching machine, operated by a foreman, Jacobs, and a crew of workmen. Sellers, a member of the crew, was a laborer who did whatever he was directed to do about the work. At the time the accident occurred the ditch had been dug part way across Hallock road, the machine stood in the road, and traffic on the road was obstructed.

Work on the ditch commenced at seven o'clock in the morning and the foreman usually arrived from fifteen to thirty minutes ahead of time. He lived in Kansas City, and came to work in his own automobile. When coming to work on November 20, 1923, he drove his car northward across the railroad track, then proceeded in a northeasterly direction, and parked his car at a point thirty or forty feet from the railroad track and within the north portion of the curving junction with Hallock road of the road running down the railroad track. Shortly before 1:25 p. m. Sellers observed a truck loaded with timbers approaching from the south on the Hallock road. The timbers were to be delivered to a contractor other than the construction company, and in order to do so, it was necessary for the truck to turn into the road beside the railroad track. Transportation of the timbers bore no relation to the work in which the construction company was engaged. Sellers feared that when the truck made the turn the timbers might not clear the foreman's car. He went up to the elevated platform of the ditching machine on which the operator stands, told the foreman of his apprehension, and asked for the key to the car, so he might move it. The foreman did not believe the car was in any danger, but finally yielded to Sellers' request and gave him the key. At the time, the car was from fifty to seventy-five feet from the ditching machine. Sellers got off the machine, went to the car, unlocked it, and drove it upon the railroad track, where it was struck by a train. The car was wrecked and Sellers was killed. The sketch on the following page will assist in visualizing the scene of the accident.

The statute provides for compensation for "personal injury by accident arising out of and in the course of employment" (R. S. 44-501), "in the course of the employer's trade or business on, in or about . . . engineering work" (R. S. 44-505), which includes excavating when power machinery is used (R. S. 44-508). There is nothing in the record to indicate that the danger zone of the ditching work in progress when the accident occurred, or any other work the construction company contracted to do in the Fairfax district, ex-

Showing Site of Fatal Accident at Hallock St. near Kansas City, Kan. on Nov. 20, 1923.
At M.P. 288·14. Poles on Mo. Pac.
Notes 11-22-23 by G.Butliyr.Asst Engr.
Scale ---- 1"·50'

tended southward beyond the north limit of the railroad right of way, or what would be the north limit of the railroad right of way extended across the Hallock road. Sellers was employed to do the construction company's work, not to look after Jacobs' car, and the course of his employment was broken by his voluntary withdrawal to do an act which bore no relation to his employment and which took him away from it. Leaving these obstacles to recovery of compensation at one side, the accident did not arise out of the employment.

The phrase "arising out of  .  .  . · employment," suggests casual relation between employment and injury. The verb "arise" has a meaning which takes note of circumstances viewed as results, and the prepositional phrase "out of" has a meaning of "from (something) as a cause." (Oxford English Dictionary.) Prompted by the suggestion, the courts frequently define the phrase by stressing the element of causation. Thus, in *McNicol's Case*, 215 Mass. 497, the court said:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." (p. 498.)

This definition was not proposed as accurately including all cases embraced within the workmen's compensation act, nor as excluding with precision all cases not within the terms of the act. The court was not content to say that an injury arises out of employment when a casual connection between employment conditions and injury is apparent. Many different things, conditions, or circumstances usu-

ally contribute to production of an effect. The law regards legal cause only. Employment, although a factor, may not have been a substantial factor in bringing about injury, and in that event compensation is not recoverable. Therefore, after proposing the test of some casual relation, the court qualified it by introducing the old standby, "proximate cause." There may be liability, however, when employment is not proximate cause. The indispensable factor without which injury would not have occurred, and hence the legal and logical cause, may have been the workman's own negligent conduct. In such a case, other conditions being satisfied, his injury is compensable. In the case of *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190, it was shown that compensation is not restricted to cases of injury flowing from some hazard peculiar to the employment. It is sufficient if the hazard was incidental to the employment. The result is, interpretation of the statute in terms of proximate cause is inadequate, and leads to confusion. To avoid these embarrassments, "arises out of" should be regarded as establishing the limit of protection afforded by the compensation act, rather than as relating to operative cause of injury. The statute itself distinguishes between cause of an injury and what it arises out of:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation to the workman in accordance with this act." (R. S. 44-501.)

The hazards to which a workman is exposed are numerous. Some spring from the nature and conditions of the employment. A miner strikes his face against a piece of slate hanging from the roof of the mine (*Sedlock v. Mining Co.*, 98 Kan. 680, 159 Pac. 9). Others spring from sources unrelated to the nature and conditions of the employment. In the course of employment an epileptic workman falls in a fit and is burned by hot pipes (*Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863). The real question involved in such cases is whether the risk was one within the purview of the statute and, generally speaking, it is sufficient if the injury result from causes originating within the employment, considered as a protected field. If in any case the cause of injury takes its rise from something extraneous to the employment, the injury does not arise out of the employment, and recovery should be denied on that ground, not on the ground that the employment is not proximate cause. The problem is usually solved, however, by invoking the doctrine of proxi-

mate cause. A very searching and very helpful examination of that doctrine may be found in Green's "Rationale of Proximate Cause" (1927).

Applying the test of causal relation, the injury to Sellers did not arise out of his employment. It is probable to a high degree of certainty that Sellers would not have been struck by a Missouri Pacific train on the Hallock road crossing at 1:25 p. m. of November 20, 1923, while he was moving Jacobs' car, if he had not been employed by the construction company as a member of the ditching crew working in the Fairfax district. The employment, however, does not explain how it came about that Sellers was struck by the train. Given the employment, the accident must still be accounted for. Given the accident, no previous observation of the laws of nature, or previous experience of mankind, would lead the mind backward to employment as a member of the ditching crew as its efficient cause. The employment was simply a fact in the complete history of the accident; it was not a factor of appreciable influence in producing the accident. A falling barometer indicates a coming storm; but antecedence does not of necessity indicate causal relation. Air consists chiefly of nitrogen and oxygen, and is helpful in lighting a wood fire in the grate. Nitrogen is an antecedent, but it is not a cause of the lighting. On the other hand, it retards combustion, which is supported by the oxygen. In this instance, the duty involved in the employment was a constraint upon Sellers, tending to keep him at work in a place of safety.

Applying the test of extent of protection afforded by the statute, Sellers' injury did not arise out of his employment. The construction company was not concerned about how Jacobs came to work or where he left his car, and was not concerned about the movement of the truck loaded with timbers, or whether the timbers might strike the car. In his capacity as employee of the construction company, Sellers was not concerned about any of these matters. They had no connection with his employment. The fatal occurrence originated in the operation of the truck under conditions which seemed to Sellers to threaten Jacobs' car, and prompted him to take measures to protect it. So prompted, he obtained the key of the car, unlocked it, put it in motion, and drove it on the railroad track. The train did the rest. The entire episode was foreign to Sellers' employment and beyond the limit of the protection afforded by the workmen's compensation act.

The judgment of the district court is affirmed.