No. 31,638

Rosa Finck et al., *Appellants*, v. James C. Galloway et al., *Appellees.*

(29 P. 2d 1091.)

Opinion filed March 10, 1934.

*Clyde E. Souders* and *Otto R. Souders,* both of Wichita, for the appellants.

*Allen B. Burch, J. B. Patterson, P. J. Warnick* and *A. W. Geiger,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Johnston, C. J.: This action under the workmen's compensation act was brought by Rosa Finck, mother of Jesse Owen Towles, deceased, and Robert Finck, his stepfather, for compensation as partial dependents. Compensation was denied because the commission and the district court each held that the injury did not arise out of the employment in which Towles was engaged when he was killed. The plaintiffs appeal.

Jesse Owen Towles was employed by James C. Galloway. The latter was conducting a business of washing, polishing and otherwise cleaning automobiles, doing business under the name of the Wichita Auto Wash. On the morning of the accident, which was April 4,

1933, Towles and six other men employed to work on the cars in this respect, had worked for about two hours, when there were no further cars to be washed. At that time these men went into the office to dry their clothing and visit with each other while waiting for other cars to come in. During this time the conversation turned to firearms, and Chase, one of the workmen, went to his overcoat and procured a .38 revolver. He handed it to the deceased, who took out the shells, examined the gun and passed it to one of the other men, retaining the shells. The revolver was examined by each of the persons present with the exception of the employer, Galloway. It was then returned to deceased, who examined it again and handed it to Chase. When Chase received the revolver he held it for a moment, and while so holding it the gun was accidentally discharged, severing Chase's finger and fatally wounding Towles. Galloway, the employer, was present during this period. It appears that someone had transferred the shells back to the gun, but it does not appear that Galloway had knowledge that they were replaced. As a matter of fact, he was busy examining a bank statement and paid little attention to what was going on among the men in another part of the office. It had not been the custom to have firearms around the shop. Galloway, it appears, saw the gun being passed from one to the other of the employees on this morning, which was the first time that he had ever seen it around there. He was not watching the boys at all, but was checking up on the bank statement which he had received the evening before. Under the facts the question arises, Can it be said that the injuries sustained by Towles arose out of his employment?

The foregoing facts, about which there is no material dispute, present the question of law, Did the accident arise out of the employment? Two elements are essential to the right of compensation of an accidentally injured employee. One is that it shall arise out of and the other that it shall occur in the course of the employment. They are conjunctively stated in the act, and hence both must concur. (*Bevard v. Coal Co.,* 101 Kan. 207, 165 Pac. 657; *Haas v. Light & Power Co.,* 109 Kan. 197, 198 Pac. 174.) It seems to be conceded that the accident occurred in the course of employment and hence we have only to ascertain, Did it arise out of the employment? A pertinent case is *Cox v. Refining Co.,* 108 Kan. 320, 195 Pac. 863, in which it was held that to carry out the purpose of the act an injury, to be compensated, must be one that arose out of the em-

ployment. There the workman injured had long been afflicted with epilepsy and had periodical attacks. In one of these attacks he had fallen and was injured, and subsequently sought compensation. In dealing with the question the court took occasion to say:

"'In the course of his employment,' as a phrase, simply means that it happened while he was at work in his employer's service. The phrase relates to the time, place, and circumstances under which the accident occurred. But it is not sufficient to impose liability upon the injured workman's employer that the injury arose in the course of the employment. There is another and more important prerequisite. The injury must also arise out of the employment. It must arise because of it, or in some reasonable way be traceable to it. The injury must in some sense be due to the employment. The philosophy on which the workmen's compensation act is founded is that the wear and tear of human beings in modern industry should be charged to the industry just as the wear and tear of machinery has always been charged." (p. 322.)

It was held that the accident which caused plaintiff's injury arose from his epileptic seizure from which he had suffered for many years, was not provoked by his employment nor did his employment contribute in any degree to bring on such epileptic seizure. Therefore the injury did not arise out of the employment, and compensation was not chargeable.

*Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19, is a later case defining the statutory terms "out of," which shows that the earlier view is still adhered to. There Sellers was an ordinary laborer of a ditching crew. The foreman had parked his car at a point at which Sellers feared there was danger to it. He went to the foreman, who was operating the ditching machine, and told him that certain transportation might injure the foreman's car and asked for a key so that he might move it. The foreman did not believe the car was in danger, but finally yielded and gave Sellers the key. Sellers went to the car, unlocked it and drove it upon the railroad track where it was struck by a train. In the course of the opinion it was said:

"There is nothing in the record to indicate that the danger zone of the ditching work in progress when the accident occurred, or any other work the construction company contracted to do in the Fairfax district, extended southward beyond the north limit of the railroad right of way, or what would be the north limit of the railroad right of way extended across the Hallock Road. Sellers was employed to do the construction company's work, not to look after Jacobs' car, and the course of his employment was broken by his voluntary withdrawal to do an act which bore no relation to his employment and which took him away from it. Leaving these obstacles to recovery of compensation at one side, the accident did not arise out of the employment.

"The phrase 'arising out of . . . employment,' suggests causal relation between employment and injury. The verb 'arise' has a meaning which takes note of circumstances viewed as results, and the prepositional phrase 'out of' has a meaning of 'from (something) as a cause.' (Oxford English Dictionary.)" (p. 553.)

As we have seen, firearms were not necessary to the employment nor had they been used in Galloway's business of washing and cleaning cars. The accident occurred in the daytime when there were no cars to wash, and the young employees came into the office, where there was a stove around which they sat to dry their clothing and become warm while waiting for other cars to come in. The injury in no way arose out of the employment nor was traceable to it. As said in the Cox case, "The injury must in some way be due to the employment." In that case a quotation is made from *McNicol's Case*, 215 Mass. 497, and the following definition of the expression "out of the employment" was quoted as follows:

" 'It " arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " (*Cox v. Refining Co.*, 108 Kan. 320, 323.)

In a still later case this court has reconsidered the question of the cited cases and upheld and applied them in *Gamble v. Board of Public Utilities*, 137 Kan. 227, 10 P. 2d 729. If it were necessary cases in other jurisdictions might be cited to support the ruling we are making.

In *Ward v. Industrial Accident Commission*, 175 Cal. 42, it was decided:

"An employee who, in the course of his employment of driving a wagon to the place of work, was injured by the accidental discharge of a shotgun being carried in the wagon by a coemployee for his own pleasure, is not entitled to compensation for the injury under the workmen's compansation act, notwithstanding the employer knew the coemployee was taking the gun, as such accident bore no relation whatsoever to the nature of the employment." (Syl. ¶ 1.)

See, also, *Maronofsky's Case*, 234 Mass. 343; *Buvia v. Oscar Daniels Co.*, 203 Mich. 73; *Culhane v. Economical Garage Co.*, 176 N. Y. Supp. 508.

The plaintiffs here call attention to and rely mainly on *Willis v. State Industrial Commission*, 78 Okla. 216, where an employee during an interval in his work was warming himself by a fire on the premises of the employer and was injured by the explosion of a piece of dynamite containing a cap, brought there and thrown into the fire by a fellow employee who picked up the dynamite and threw it into the fire to see if it would explode. The court held the injury received by the employee arose out of and in the course of the employment under the workmen's compensation law. That was treated as a horse-play or skylarking case and a majority of the court, 4 to 3, gave an opinion that—

"If a workman is an active participant in what has been denominated 'horse-play,' he is not entitled to compensation, but if, while going about his duties he is a victim of another's prank, to which he is not in the least a party, he should not be denied compensation." (p. 218.)

The minority of the court held that under the rule of the Oklahoma court no recovery will be allowed where the injury results from skylarking unless a custom has been shown, and where it does not appear to have arisen out of the employment.

No reason is seen for substituting the rule adopted by the majority of that court, and hence the judgment will be affirmed. It is so ordered.