No. 31,853

CHARLES ERNEST RUSH (Claimant), *Appellee*, v. EMPIRE OIL AND REFINING COMPANY (Respondent), *Appellant*.

(34 P. 2d 542.)

Opinion filed July 7, 1934.

*James W. Finley, Hayes McCoy* and *Charles C. Julien,* all of Bartlesville, Okla., for the appellant.

*K. M. Geddes* and *Stanley Taylor,* both of El Dorado, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a workmen's compensation case in which claimant was allowed compensation for total permanent disability. Respondent has appealed. The legal questions presented are: (1) Whether the accident for which compensation was allowed arose out of the employment; and (2) if it did, the extent of plaintiff's injury and the amount of compensation due him.

The facts are not seriously controverted and may be stated as follows: Respondent produces oil from leases and operates under the workmen's compensation act as a self-insurer. It had an extensive business in Butler county, and for the more advantageous conduct of its business laid out, built and maintained the town of Oil Hill. In addition to offices, warehouses, shops, yards and barns of respondent, the town consisted of several hundred dwelling houses owned by respondent, nearly all of which were occupied by its employees and their families. Streets and alleys had been laid out. On April 4, 1928, claimant was working for respondent, taking care of its horse barns, and also in the department that looked after the cleaning of the alleys and the sanitation of the town. He was pro-

vided with a team and wagon, and with these he followed a regular route laid out for him, going through the alleys and about town gathering waste paper and trash. At about 1:30 in the afternoon on that date he was working in an alley with a team and wagon when a rain and windstorm came up from the south. For protection to himself and team from the rain and wind he led the team to the north side of a two-stall garage constructed of heavy timbers —2 x 12's—located next to the alley. While standing there holding the team the wind blew the garage over onto or against him. When he became conscious he was lying about a block north of where he had been holding the team, and the garage had rolled about a half block north from where he lay. The femur of his right leg was broken about a third of the way down, the radius of his right arm was fractured near the wrist, and he suffered other severe bruises. The wind and storm in question blew down about fifty oil derricks in the adjoining oil fields, and a portion of the porch roof of a warehouse in Oil Hill, but did no other damage.

Claimant was taken to a hospital. The bruises appear to have healed without serious lasting effect, also the fractured radius, but the injury to the right leg caused a great deal of trouble. The femur was broken in such a way that it was difficult to set. The wound became infected, osteomyelitis developed, and several operations were performed, the last one in September, 1930. There was drainage from the leg bone for about three years, during which time claimant was in the hospital, or out on crutches. At the time of the hearing of this claim by the commissioner, in July, 1932, the wound had healed, and he had no further need of medical attention. He had perhaps twenty-five per cent use of the leg. He could walk without a cane. There was a slight outward bowing of the femur, the right leg was about three inches shorter than the left, which resulted in a tilting of the pelvis to the right, and a slight curvature of the spine. The muscles of the right leg, and to a lesser degree of the right side of the back, were weak and shrunken. There was some pain in the hip joint, back, right side and groin.

Respondent paid for all hospital, surgical and medical attention —in the aggregate $3,662.44—also, without any claim for compensation having been made, and without any agreement with reference thereto, respondent after the first week began paying compensation at the rate of $15.22 per week, and continued such payment

for two hundred weeks, which amounted to full payment under the compensation law for the loss of the leg. (R. S. 1933 Supp. 44-510 (3) (c) [14]:) Respondent then ceased paying, and within ninety days thereafter, and on April 22, 1932, claimant made written claim of respondent for compensation for total permanent disability, which claim, as previously stated, was allowed.

Taking up the legal questions presented. Did the accident which caused plaintiff's injury arise "out of" his employment? Even when other conditions exist authorizing the award of compensation, it is essential that the accident which causes injury to the employee arise "out of" and "in the course of" his employment. (R. S. 1933 Supp. 44-501.) These terms are used in the conjunctive. Both conditions must exist. (*Bevard v. Coal Co.,* 101 Kan. 207, 208, 165 Pac. 657; *Haas v. Light & Power Co.,* 109 Kan. 197, 203, 198 Pac. 174.) The terms are not to be confused. They mean separate things. "In the course of" employment simply means while the employment was in progress. (*Cox v. Refining Co.,* 108 Kan. 320, 195 Pac. 863.) Those words point to the time, place and circumstances under which the accident took place. (*State Highway Commission v. Saylor* [Ky.], 68 S. W. 2d 26.) Applying these authorities to the accident which caused claimant's injury in this case, there is no difficulty in saying that the accident arose "in the course of" his employment. But that is not enough. It is essential also that it arose "out of" the employment. These words point to the cause or origin of the accident (see cases above cited), and require that some causal connection exist between the accidental injury and the employment. The purpose of the workmen's compensation act is to burden the industry with the economic loss to a workman or his dependents resulting from accidental injury sustained by the workman, not only in the course of his employment, but which was caused by, or arose out of, his employment. It never was the purpose of the compensation act that the employer should in all respects be an insurer of the employee, but he is such insurer only for those accidental injuries caused or produced in some way by the employment. The statute uses a rather broad term in the expression "out of" the employment, thereby indicating that the statute should have a liberal interpretation to accomplish its purpose (*Roberts v. City of Ottawa,* 101 Kan. 228, 165 Pac. 869; *Palmer v. Fincke,* 122 Kan. 825, 253 Pac. 583), but this does not

mean that the act should be construed to include injuries which clearly did not arise out of the employment.

(See cases above cited; also, *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19; *Mathis v. Ash Grove L. & P. C. Co.*, 127 Kan. 93, 272 Pac. 183; *Gamble v. Board of Public Utilities*, 137 Kan. 227, 19 P. 2d 729; *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 563; *Finck v. Galloway*, 139 Kan. 173, 29 P. 2d 1091.)

When the injury occurs from the elements, as from lightning, cyclone, or the like, the majority of the cases hold, and the better reasoning is, that under statutes like ours (R. S. 1933 Supp. 44-501), which fix the liability only when the accident arises out of and in the course of the employment, there is no liability unless the employment in some specific way reasonably can be said to have increased the workman's hazard to such element. This court dealt specifically with that question in *Mathis v. Ash Grove L. & P. C. Co.*, supra, where many authorities are cited and discussed, and our decision in that case has recently been cited, with many other decisions to like effect, and followed by the supreme court of Idaho in *Wells v. Robinson Construction Co.*, 52 Ida. 562, 16 P. 2d 1059, 1061, and by the Missouri Kansas City Court of Appeals in *Van Kirk v. Coal Mining Co. et al.*, 226 Mo. App. 1137, 49 S. W. 2d 631, 635. Other authorities to the same effect are collected in the annotation 83 A. L. R. 234, 239, and previous annotations there cited. While the cases cited in these annotations disclose some divergence of views not readily reconciled, what we regard as the better reasoned cases accord with the views of this court, quite consistently maintained, as shown by the decisions previously cited herein to the effect that unless some causal connection is shown between the employment and the injury caused by the elements there can be no recovery.

Where a workman, while performing the ordinary duties of his employment, observes a storm approaching and seeks shelter in or near a building which is damaged or destroyed by the storm, and the workman is injured thereby, he is not entitled to compensation in the absence of a showing that his situation was more hazardous because of his employment than it would have been otherwise. (*Mobile & O. R. Co. v. Industrial Commission*, 28 F. 2d 228; *Stone v. Blackmer & Post Pipe Co.*, 224 Mo. App. 319, 27 S. W. 2d 459;

*Baker v. State Industrial Commission,* 138 Okla. 167, 280 Pac. 603; *Slanina v. Indus. Comm.,* 117 Ohio St. 329, 158 N. E. 829.)

In this case there was no finding, nor was there any evidence to the effect that storms were more likely to occur or were likely to be more serious at the place where this garage was situated than elsewhere, as there was in *School Board v. Carter,* 156 Va. 815, 159 S. E. 115, and similar cases.

Our attention is directed to the fact that the trial court held the accident arose out of and in the course of the employment. But this could be only a conclusion of law based upon facts found. We have previously stated the facts found almost in the language used by the trial court, and there is nothing in them, or in the evidence, tending to show that the storm, and the fact that the claimant sought shelter from the storm, was in any way caused by his employment, or that his situation in those respects differed from that of any other person who might have been in the locality at the time.

In view of the conclusion we have reached on the question previously discussed it is not necessary for us to consider the extent of plaintiff's injury and what amount of compensation, if any, was due him at the time of the hearing. In this connection we simply observe that it is difficult to see that his disability is any greater than it would have been if the leg had been lost, an injury for which he has been fully paid.

Our holding that the accident did not arise out of the employment requires that the judgment of the trial court be reversed, with directions to enter judgment for respondent. It is so ordered.