No. 33,726

ADELINE FLORO, as an Individual and as Guardian of the Estates of JUANITA LEE FLORO and ROSCOE LEWIS FLORO, Minors (Claimants), *Appellants*, v. BERT TICEHURST, doing business as THE KAW VALLEY OIL COMPANY; THE KENT OIL COMPANY (Respondents); THE AETNA CASUALTY AND SURETY COMPANY, and THE EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD., *Appellees*.

(76 P. 2d 773)

Opinion filed March 5, 1938.

*Alex Hotchkiss,* of Lyndon, for the appellants.

*T. M. Lillard, O. B. Eidson* and *Philip H. Lewis,* all of Topeka, for appellees Bert Ticehurst and the Aetna Casualty and Surety Company.

*Hugh T. Fisher* and *Irwin Snattinger,* both of Topeka, for appellees Kent Oil Company and Employers Liability Assurance Corporation.

The opinion of the court was delivered by

HARVEY, J.: This was a workmen's compensation case. The claimants are dependents of the workman, Roscoe Floro, whose death resulted from an accident. The principal question in the case was whether the accident arose out of and in the course of his employment with the respondent, Bert Ticehurst. All other questions entitling the claimants to compensation as against him were stipulated at the hearing. The trial court denied compensation, and the claimants have appealed.

Except as deductions and conclusions might be drawn from them, the facts are not seriously controverted, and may be stated as follows: Bert Ticehurst, doing business as the Kaw Valley Oil Company, is engaged in the business, among other things, of transporting gasoline by truck. The Aetna Casualty and Surety Company car-

ried his compensation insurance. He planned to keep his trucks, transporting gasoline, moving as much of the time as possible, and always sent two drivers with the truck, each to drive a part of the time. As between themselves, neither of the men with the truck was the boss of the other; each had as much authority as the other. They had been instructed to assist other truck drivers temporarily in trouble on the road, but not to go off the road to do it, nor to spend a lot of time, such as half a day. On the evening of August 1, 1936, he sent Floro and P. N. Riley, as drivers, with one of his trucks to get a load of gasoline at the Russell Refining Company, located a few miles west of the city of Russell. The loading dock of the Russell Refining Company is situated about 200 feet south of a state highway, known as U. S. 40, and is connected with it by a semicircular drive, so laid out that a truck can pull up to either side of the loading dock to be loaded. The ends of this semicircular drive where it is connected with U. S. 40 are about 225 feet apart. Floro and Riley reached this loading dock on the morning of August 2 and pulled up to the south side of the loading dock, their truck facing east, to be loaded, and both went to the office to sleep while the truck was being loaded. About the time they drove in for their load Clifford Hines, driving a truck for the Kent Oil Company, pulled up on the north side of the loading dock, his truck headed west, to be loaded. Floro and Riley were wakened when their truck was loaded, and Riley, whose turn it was to drive, went out and got in the Kaw truck and drove it to the filling station of the refining company to have gas put in the gas tank. Floro stayed in the office to sign the receipt for their load. By this time the Kent truck was loaded and Hines had tried to start his engine and found the battery too weak. He came to the office of the refining company and asked its manager about getting a truck to pull his truck to get it started. He either asked Riley to use the Kaw truck to pull his truck to start it, or Riley, hearing him talk about it, offered to do so, which offer Hines was glad to accept. It is not clear that Floro took any part in the conversation at that time. Riley got into the cab of the Kaw truck, turned it around, and drove in front of the Kent truck and stopped for Hines to connect the two trucks with a chain. While he was doing that Floro came up and suggested or directed where the chain should be attached to the Kaw truck. The trucks having been attached together, and Riley and Kent in the cabs of their respective trucks, Riley started forward on the driveway towards its west

entrance to U. S. 40. The engine of the Kent truck started, but stopped before the Kaw truck had reached U. S. 40. It was then agreed between Riley and Hines to pull the trucks out on U. S. 40 and turn east. Whether Floro was consulted about that and agreed to it is not clear, but it is not contended that he objected. The two trucks connected together had a total length of about 80 feet. To make the turn from the driveway east on U. S. 40 it was necessary for the Kaw truck driven by Riley to get north of the center of U. S. 40. That highway carries a heavy vehicular traffic. As the trucks moved forward Floro walked at the side and ahead of the Kaw truck to direct traffic. Riley testified that was a necessary, or at least a prudent, thing to do. After the trucks had moved out on U. S. 40 and turned east the engine of the Kent truck started. Floro then was near the north side of the pavement on U. S. 40. He noticed that the engine on the Kent truck had started and signalled to Riley to stop, which he did, and Floro started across the pavement of U. S. 40 to the trucks, perhaps for the purpose of disconnecting the chains which attached them. As he did so he was struck by a passing automobile and killed.

In addition to finding the facts substantially as above stated, the court found that Floro was engaged with Riley and Hines in starting the Kent truck; that they were under no obligations to the driver of the Kent truck or to the Kent Oil Company to assist in the starting of their truck, and what they did in this connection was done gratuitously, as mere volunteers, and without any expectation of compensation; that in attempting to start the Kent truck they turned their own truck completely around and went in an opposite direction from that in which they naturally would have traveled in the performance of their duties to their employer, and that in performance of their duties to their employer it was not necessary for either of them to leave their truck and go on foot upon highway U. S. 40. The court concluded, as a matter of law, that at the time of the fatal injury to Floro he was outside the course of his employment with the Kaw Valley Oil Company.

It is conceded that neither Riley nor Floro expected compensation for what they did in helping to start the Kent truck, and that they were under no contract or other financial obligation to do anything about starting that truck. They were, however, permitted by their employer to give assistance on the road to another trucker temporarily in need. The finding that Floro was engaged with Riley

and Hines in starting the Kent truck must be interpreted in harmony with findings previously made that Floro was not Riley's boss; that it was Riley's turn to drive, and that Riley is the one who told Hines he would use the Kaw truck to help him get his started, and that Riley is the one who turned the Kaw truck around and who drove it out onto U. S. 40. If in doing these things Riley was going outside of the course of his employment—which appellants do not concede —Floro had no authority to tell him not to do it. Hence, these findings, if true, do not constitute reasons for denying claimants compensation.

Appellees stress the fact that by turning the truck around and driving onto U. S. 40 at the west end of the driveway Riley drove some 200 feet out of the most direct course to the east, the direction he wished to go with his load. This fact should not bar claimants, for two reasons: There is no finding, nor is there any evidence, that the drivers of the Kaw truck were forbidden by their employer from driving a few feet out of their direct course under any and all circumstances. Had the Kent truck not been there, and Riley, using his judgment as the driver of the Kaw truck, had driven onto U. S. 40 from the west entrance instead of from the east, there is nothing in this record to show that he would have violated any specific instruction of his employer, or that he would not have been in the employment of respondent while he was doing so. More than that, Riley was then in charge of the truck as its driver; Floro was not. If there is any criticism on this point it should not be charged to Floro.

The finding that in discharging their duties to their employer it was not necessary for either Floro or Riley to leave their truck and go on foot on U. S. 40 is more in the nature of a general conclusion than a finding of fact, as applied to this case. With respect to this, appellees argue if Riley had driven out of the driveway at the east entrance, with no other truck attached, he could have negotiated the turn onto U. S. 40 with safety without the necessity of anyone to direct traffic; and, furthermore, that these men were hired as truck drivers, not as traffic directors. Findings of fact should be made with respect to the evidence received in the case before the court. They should not be based on some other state of facts not shown by the evidence. Here the evidence disclosed that the two trucks, connected by a chain, and having a combined length of about 80 feet, were moving onto U. S. 40 at the west driveway entrance

and turning east; that to negotiate the turn the forward truck had to go far enough north to be past the center of the pavement on U. S. 40; that this is a much-traveled highway; that it was deemed necessary, or at least prudent, by all of the parties there, including the manager of the loading dock, that someone direct the traffic, for a collision between a motor vehicle on the highway and a Kaw truck might have resulted in serious damage to respondent. These are elements which should have been taken into account in making a finding on this point. The finding made is not predicated on the evidence in this case and must be disregarded in determining the right of claimants to compensation.

In support of the decision of the trial court it is argued on behalf of appellees that the accident did not arise "out of the . . . employment" (G. S. 1935, 44-501), citing and relying largely on *Sellers v. Reice Construction Co.,* 124 Kan. 550, 262 Pac. 19, and *Finck v. Galloway,* 139 Kan. 173, 29 P. 2d 1091. The argument and the authorities cited are beside the point. Whether the accident arose "out of" the employment appears never to have been a controverted question in this case; or if so at all, as not being the controlling question in the case, and the trial court did not base its decision on that point. At the hearing before the compensation commissioner the point specifically in issue was whether the accident arose "in the course" of the workman's employment; and that was the specific point ruled upon by the district court. The record indicates that the entire trial, both before the compensation commissioner and in the district court, proceeded upon the view that if Floro was "in the course" of his employment at the time he was on the highway and started to cross the pavement to the trucks, then his accidental injury arose "out of" his employment. We consider that the correct view. Under our compensation act (G. S. 1935, 44-501) an accidental injury, to be compensable, must be one "arising out of and in the course of employment." This clause has been construed many times. It has become the settled law in this state that the phrase consists of two parts, each having a distinct meaning; they are not to be confused. (*Bevard v. Coal Co.,* 101 Kan. 207, 208, 165 Pac. 657.) In *Cox v. Refining Co.,* 108 Kan. 320, 322, 195 Pac. 863, it was said:

"'In the course of his employment,' as a phrase, simply means that it happened while he was at work in his employer's service. The phrase relates to the time, place, and circumstances under which the accident occurred."

Our later cases are to the same effect. (*Stringer v. Mining Co.*, 114 Kan. 716, 718, 220 Pac. 168; *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.)

The phrase "out of . . . the employment" requires a showing of some connection between the work that was being done and the accident which caused the injury; that the accident was in some reasonable sense one of the hazards of the work that was being done. (See cases above cited.) Here, if the accident occurred "in the course" of Floro's employment, that is at a time and place and under circumstances within the scope of his duties as an employee, there is no question but that it arose "out of" the employment.

Respondents centered their defense on the contention that at the time of the accident Floro was not at a place where his employment took him, nor was he doing work for which he was employed. That was the conclusion of law of the trial court. We think that conclusion is erroneous. Assisting to start the Kent truck was permissible under the employment of Floro and Riley, and was incidental to the principal purpose for which they were employed. (See *Fairchild v. Prairie Oil & Gas Co.*, 138 Kan. 651; 27 P. 2d 209; *Wetlaufer v. Howse*, 146 Kan. 500, 71 P. 2d 879, and authorities there cited.) More than that, since Riley was rightfully driving the Kaw truck, and had driven it to where it was entering U. S. 40, any criticism because he had done so should not be imputed to Floro, who was not Riley's superior. Floro was entitled to act for the best interests of his employer in the situation which then existed. Directing the traffic on U. S. 40 as the Kaw truck moved out into the highway was in the interest of his employer to prevent damage to his truck and cargo. Had he not done so, and had the Kaw truck and cargo been damaged or destroyed by reason of that fact, he would have been subject to censure by his employer. After the trucks had moved onto U. S. 40, and the Kent engine started, Floro gave a signal to Riley to stop, and started across the highway to his employer's truck to do whatever was necessary to be done about disconnecting the Kent truck and to go with Riley and his employer's truck. We think it cannot be said that what he was doing at the time of the accident was outside of the scope of his duties to his employer, or outside of the course of his employment, as that phrase is used in our statute. (G. S. 1935, 44-501.)

Appellees refer to the privilege, or direction, the employer of Floro and Riley gave them about helping other truckers on the road temporarily in need of help, and point out that the loading dock of the refinery was some 200 feet from U. S. 40, and argue the parties were not on the road, hence outside of the place where they were authorized to help another trucker. This argument lacks force. The driveway from and to U. S. 40 by the loading dock was a part of the road necessary for respondent's truck to travel; the trucks had to go over it to get to and from the loading dock, and when Floro or Riley were there they were not off the road they were expected to travel.

When claimants filed their claim for compensation they named also as respondents the Kent Oil Company and its insurance carrier. Both the compensation commissioner and the trial court held they were not liable to claimants for compensation. With this holding we agree. Neither Floro nor Riley was an employee of the Kent Oil Company. There was no contractual relation between them essential to the applicability of the workmen's compensation act. (See *Workman v. Kansas City Bridge Co.*, 144 Kan. 139, 141, 58 P. 2d 90, and cases there cited.) They were not "workmen" of the Kent Oil Company, as that term is defined in our statute. (G. S. 1935, 44-508.) Counsel for the Kaw Valley Oil Company and its insurance carrier argue that in common fairness as between them and the Kent Oil Company the latter, if either, should pay. We are not dealing here with the equities between these parties. Our problem is to determine if claimants can recover compensation from the Kent Oil Company. We are confident they cannot do so, since Floro had no contractual relations with the Kent Oil Company.

The result is, the judgment of the trial court must be reversed as to Ticehurst and his insurance carrier, with directions to allow claimants compensation against them, and must be affirmed as to the Kent Oil Company and its insurance carrier. It is so ordered.